48

GREENFIELD SEED COMPANY *v.* Hughy BLAND

CA 85-461                                        710 S.W.2d 833

Court of Appeals of Arkansas
Division I
Opinion delivered June 4, 1986

*Boyce & Boyce*, by: *Wayne Boyce* and *Edward Boyce*, for appellant.

*Woodruff & Huckaby*, for appellee.

DONALD L. CORBIN, Judge. Appellant, Greenfield Seed Company, appeals from a jury verdict in favor of appellee, Hughy Bland, in the sum of $51,000 on appellee's counterclaim for breach of warranty.

In April 1981, appellee purchased registered Labelle rice seed from appellant who billed appellee on terms "net 10 days." Appellant, in its effort to fill appellee's order, secured sufficient quantities of seed from Big River Seed Company and Jennings Rice Dryer. Appellant sued appellee in January 1982, for the amount owed on the seed in the sum of $31,885.36. In May 1982, appellee counterclaimed for breach of warranty, alleging that the seed was unfit for the purpose for which it was purchased.

Appellant appeals the jury verdict on the basis that appellee failed to plead as well as give notice of the breach of warranty. The applicable statute to the facts of the case at bar is Ark. Stat. Ann. § 85-2-607(3)(a) (Add. 1961), which provides:

> Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; and

Comment 4 to this statutory provision provides:

> The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.
>
> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights

under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2-605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

■ We will first address the argument that appellee failed to plead notice. In this regard, appellant cites *L. A. Green Seed Co.* v. *Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969), as controlling. In *L. A. Green Seed Co.*, Williams sued L. A. Green Seed Company, alleging that it had sold him tomato seed warranted as "Green's Pink Shipper" seed but it actually was of a different variety. When the trial court overruled L. A. Green Seed's demurrer to Williams' complaint as amended, L. A. Green Seed refused to plead further. After taking evidence, the trial court awarded damages to Williams. The Arkansas Supreme Court agreed with L. A. Green Seed Company that Williams' complaint was subject to a demurrer because it did not contain an allegation of notice as required by Ark. Stat. Ann. § 85-2-607(3)(a). The court held that:

> We hold that the giving of reasonable notice is a condition precedent to recovery in this action and that the giving of notice must be alleged in the complaint in order to state a cause of action.

*Id.* at 469, 438 S.W.2d at 720. The court referred to Comment 4 to Ark. Stat. Ann. § 85-2-607 and stated:

> Of course, the sufficiency of notice and what is considered to be a reasonable time within which to give notice of breach of warranty are ordinarily questions of fact for the jury, based upon the circumstances in each case.

*Id.* at 468, 438 S.W.2d at 720.

In the case at bar, appellant initiated these proceedings against appellee seeking a money judgment for the amount owed for seed appellant had sold appellee on account. Appellee filed a

timely answer generally denying the allegations contained in appellant's complaint. In May of 1982 appellee filed his counterclaim alleging breach of warranty in the sale of the seed. Appellant filed its reply to appellee's counterclaim which denied the allegation of breach of warranty. Appellee filed his Second Amendment To Counterclaim on March 14, 1985, wherein it was alleged as follows: "As soon as it was possible to determine the seed was defective, Defendant, Hughy Bland, now being represented by the Trustee in Bankruptcy, notified Greenfield Seed Company that red rice was in the seed sold to Hughy Bland in violation of the warranties both expressed and implied." The issue of failure of notice did not arise until appellant moved for a directed verdict at trial at the close of the evidence. Appellant's basis for directed verdict was appellee's failure to provide notice as required by Ark. Stat. Ann. § 85-2-607(3)(a). In denying this motion, the trial court inquired of counsel as follows: "Why are you just now raising it?" Counsel for appellant responded, "Why — I had to make sure that they never proved it."

The record clearly reflects that appellee pled notice and counsel for appellant conceded this point in oral argument before this court. In any event, the record reflects that appellant did not argue failure to plead notice until it filed its brief with this court on appeal. As previously noted, appellant moved for a directed verdict *only* on the basis of appellee's alleged failure to provide notice. We agree with appellee's assertion that this argument is without merit inasmuch as appellee did in fact plead notice and appellant never raised the issue of failure to plead notice below as a condition precedent to recovery by appellee in this cause of action. It is well settled that we do not consider issues raised for the first time on appeal.

We find no merit in appellant's second assignment of error wherein it contends the trial court erred in failing to direct a verdict in its favor on the basis that appellee failed to give adequate notice of the breach of warranty.

In *Cotner* v. *International Harvester Co.*, 260 Ark. 885, 545 S.W.2d 627 (1977), Cotner purchased two International Harvester Transtar trucks from an International Harvester dealer. After the trucks had exceeded 150,000 miles, Cotner began experiencing breakdowns with the trucks, which necessitated

repeated repair expenses with International Harvester dealers as well as independent repairmen. In Cotner's suit against International Harvester for breach of warranties of merchantability and of fitness for a particular purpose, the court, in denying his claim for failure to give notice of the defects to International Harvester, noted that Cotner's conversation with an International Harvester dealer's salesman about trading the trucks because they weren't doing the job for which they had been purchased, did not constitute notice. Evidence established that Cotner had paid all repair bills relating to the defects. Cotner asked mechanics employed by International how he could stop the trouble, and the court determined that this did not constitute notice. The court concluded that, "To say the least, in no instance did Cotner ever indicate that he looked to appellee (International Harvester Company) to remedy the situation or to pay any damages." *Id.* at 890, 545 S.W.2d at 630.

■■ The court in *Cotner, supra,* reasoned that:

It is true that the requirements of notification are not stringent. Notice need only be sufficient to inform the seller that the transaction is claimed to involve a breach and thus to open the way for negotiation of a normal settlement. It must, however, be sufficient to let the seller know that the transaction is still troublesome and must be watched. Comment 4, § 85-2-607. The purpose of the requirement is to enable the seller to minimize damages in some way, such as correcting the defect and to give some immunity from stale claims. *L. A. Green Seed Co. of Arkansas* v. *Williams*, 246 Ark. 463, 438 S.W.2d 717. Ordinarily, the sufficiency of notice is a question of fact for the jury based upon the circumstances. *L. A. Green Seed Co.* v. *Williams*, supra.

*Id.* at 889, 545 S.W.2d at 630. However, the court went on to state:

In spite of the fact that the question of reasonableness of notice, as to time, form and substance is usually a question of fact, where all the evidence is such that it can lead reasonable minds to only one conclusion as to the sufficiency of notice, the question presented is one of law to be resolved by the court. [cite omitted]

*Id.* at 889, 545 S.W.2d at 630.

The evidence in the instant case clearly established that red rice could not be detected in a growing field until the rice plant started to flag. This growth stage occurred in late summer at about the time harvesting was to take place.

Ken Carter was manager of appellant Greenfield Seed Company at the time of the seed purchase. He had 21 years of experience in the raising, production, testing and sale of rice seed. He testified that he viewed the fields of appellee at or near the time of harvest and observed red rice in them.

Appellee testified that Carter came to his farm the first of August 1981, to look at his fields. He testified that Carter came back around the first of October, which was about the time appellee started combining. He admitted that he did not ask for damages for bad seed from Carter at the time because he didn't know what he was going to do about it them. Appellee stated that he noticed the red rice when it started flagging in August. Testimony revealed that flagging occurs when the top leaf comes out and that with red rice, it usually comes out six to eight inches higher than Labelle. The evidence adduced indicated that red rice was unacceptable when a rice farmer was growing Labelle rice for certification as seed, except in limited quantities. Certified seed apparently commanded a higher return on its sale than did a sale of a rice crop for consumption. Appellee testified that the red rice was thick all over his fields. Carter testified that he reached appellee by phone on the 19th of September 1981, and was told by appellee that he had a mixture in his rice. We find it significant that Bobby Horton, half-owner of Big River Seed Company of Cleveland, Mississippi, and one of the suppliers to Greenfield of the seed in question, testified that Ken Carter called him in late summer, near the harvest of 1981, and told him that Carter had a problem with possible red rice in some seed Carter had sold. Horton testified he offered to come over the next morning. Carter responded as follows: "No, he said, Bobby, hold off cause look, he said, I've been talkin' to the farmer and see what it's all about. He wanted to put me on warning that it was there."

There was sufficient evidence that notice of damage was, at the very least, inferentially given by appellee to appellant. From the evidence and oral argument of counsel, it appears that

54

appellee's actual damages would not have been ascertainable until appellee's 1981 rice seed was graded for certification by the Arkansas Plant Board sometime in April or May following its harvest; or, at about the time appellee would have attempted to sell the seed for planting in the new crop year. In May appellee filed his counterclaim seeking damages. This possibly was the first time that appellee could, with any degree of certainty, ascertain his damages because this was about the time that the Arkansas Plant Board refused to certify his seed crop as Labelle seed because of the unacceptable quantity of red rice in the crop. We conclude there was some evidence that appellant did have notice of the existence of the red rice in August, September and October of 1981. Whether such notice was sufficient and reasonable as to time, form and substance was a question of fact properly submitted to the jury for its determination, and the trial court did not abuse its discretion in denying appellant's motion for a directed verdict.

Affirmed.

GLAZE, J., and WRIGHT, Special Judge, agree.